IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WESTMORE EQUITIES, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 3:15-cv-00109 |
| v. ) | |
| ) | **JURY TRIAL DEMANDED** |
| CITY OF MOUNDS, an Illinois Municipal ) | |
| Corporation, WAYMON A. BUTLER, JR., ) | |
| and ROBIN L. BARKSDALE, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiff, Westmore Equities, LLC, ("Westmore") for its Complaint against Defendants City of Mounds (the "City"), Waymon A. Butler, Jr. ("Butler"), and Robin L. Barksdale ("Barksdale"), states as follows:

## NATURE OF THE ACTION

1. This action arises out of a contract between Westmore and the City entered into on April 21, 2010 "in accordance with the TIF Act, the City of Mounds approved ordinances adopting tax increment financing and the Mounds TIF #1 Tax Increment Financing Plan and Project." A copy of the contract (the "Redevelopment Agreement") is attached hereto as Exhibit 1 and incorporated herein by reference.

2. Pursuant to the Redevelopment Agreement, Westmore was to develop certain property within the Mounds TIF #1 Tax Increment Financing Area, and Westmore was eligible to receive annual payments from the City's TIF Special Allocation Fund (the "Special Allocation Fund") for certain qualifying redevelopment project costs under Section 11-74.4-3 of the TIF Act, up to a maximum amount of $350,000.00

1

3.      Pursuant to the Redevelopment Agreement, in 2013, Westmore requested reimbursement from the Special Allocation Fund, which the City paid.

4.      In 2014, following Westmore's similar request for reimbursement from the Special Allocation Fund, the City notified Westmore that the Redevelopment Agreement was void and the City was legally prohibited from paying Westmore because the Redevelopment Agreement was never approved by the Mounds City Council.

5.      Westmore seeks a declaration, pursuant to 28 U.S.C. § 2201, that the Redevelopment Agreement is a valid and binding agreement because, *inter alia*, the City was not required to pass an additional ordinance to enter the agreement.  Alternatively, Westmore seeks relief from the City's mayor and clerk for breach of warranty of authority.

## THE PARTIES

6.      Plaintiff Westmore Equities, LLC, is a Missouri limited liability corporation whose two members are residents of and domiciled in the State of Missouri.  Therefore, Westmore is a Missouri citizen.

7.      Defendant City of Mounds, an Illinois Municipal Corporation located in Pulaski County, Illinois, is an Illinois citizen.

8.      Upon information and belief, Defendant Waymon A. Butler, Jr. is an Illinois citizen, residing and domiciled in the State of Illinois.

9.      Upon information and belief, Defendant Robin L. Barksdale is an Illinois citizen, residing and domiciled in the State of Illinois.

**JURISDICTION AND VENUE**

10. This Court possesses original jurisdiction of this civil action based upon diversity of citizenship pursuant to 28 U.S.C. § 1332. The matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

11. Venue is proper in the Southern District of Illinois pursuant to 28 U.S.C. § 1391, because Defendants reside in the Southern District of Illinois and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in the Southern District of Illinois.

**FACTUAL ALLEGATIONS**

12. In 2009, the City began taking action to create a Tax Increment Financing ("TIF") program to develop and redevelop certain portions of the City.

13. On November 2, 2009, the City Council of Mounds (the "City Council") passed Resolution No. 2009-01-R, providing for a feasibility study on the designation of areas as redevelopment project areas as set forth in the Tax Increment Allocation Redevelopment Act (the "TIF Act"), 65 ILCS 5/11-74.4-1 (the "Feasibility Resolution"). A copy of the Feasibility Resolution is attached hereto as Exhibit 2 and incorporated herein by reference.

14. The Feasibility Resolution described the concept behind a TIF program: "Redevelopment, which occurs in a designated Redevelopment Project Area, will increase the equalized assessed valuation of the property and, thus, generate increased property tax revenues. This increase or 'increment' can be used to finance 'redevelopment project costs' such as land acquisition, site clearance, building rehabilitation, interest subsidy and the construction of public infrastructure within that same Redevelopment Project Area.'" Ex. 2, p. 2.

15. The Feasibility Resolution authorized a feasibility study on the designation of a redevelopment project area. Ex. 2, p. 1 ¶ 1.

16. The Feasibility Resolution provided that "[t]he purpose of the proposed redevelopment plan and project within the City of Mounds is to provide incentives for commercial and light industrial development . . . in an area where development and/or redevelopment would not occur but for the use of tax increment financing." Ex. 2, p. 1 ¶ 2.

17. On November 2, 2009, the City Council also passed Resolution No. 2009-02-R, an Inducement Resolution related to the development of a TIF program (the "TIF Inducement Resolution"). A copy of the TIF Inducement Resolution is attached hereto as Exhibit 3 and incorporated herein by reference.

18. The TIF Inducement Resolution stated that:

   a. the City "desires to develop and redevelop certain portions of the City for light industrial and commercial land uses";

   b. "those portions cannot be redeveloped without the use of tax increment financing";

   c. "the City will be expending certain funds for and it is the intent of the City to assist with these expenditures from the TIF program"; and

   d. "the City wishes to pursue a plan for redevelopment of the area and make such expenditures as are reasonably necessary in that regard with confidence that said expenditures may be allowable redevelopment project costs."

Ex. 3.

19. The TIF Resolution found "that the City Council has examined the proposed area and circumstances, and at this time believe that it is reasonable to believe that certain expenditures and development costs in furtherance of the plan and potential development should be allowable redevelopment project costs under the plan . . . ." Ex. 3.

20. In December 2009, the City Council reviewed an eligibility study for the TIF program and approved a motion to proceed with the TIF Plan.

21. On January 4, 2010, the City Council reviewed and accepted the Mounds TIF #1 Redevelopment Plan and Redevelopment Project, and set a date for a public hearing "for City Council consideration of the Mounds TIF #1 Redevelopment Plan and Redevelopment Project and Redevelopment Area within the City of Mounds, Illinois." Exhibit 4, City Council Meeting Minutes (Jan. 4, 2010).

22. On January 19, 2010, the City Council passed Resolution No. 2010-02, an Inducement Resolution related to Westmore (the "Westmore Inducement Resolution"). A copy of the Westmore Inducement Resolution is attached hereto as Exhibit 5 and incorporated herein by reference.

23. The Westmore Inducement Resolution provided that:

   a. the City "desires to develop and redevelop certain portions of the City of Commercial land uses";

   b. "those portions cannot be redeveloped without the use of tax increment financing";

   c. "the City and Westmore Equities, LLC will be expending certain funds for and it is the intent of the City to assist Westmore Equities, LLC with these expenditures from the TIF program"; and

   d. "the City and Westmore Equities, LLC wish to pursue a plan for redevelopment of the area and make such expenditures as are reasonably necessary in that regard with confidence that said expenditures may be allowable redevelopment project costs."

Ex. 5.

24. The Westmore Inducement Resolution found "that the City Council has examined the proposed area and circumstances, and at this time believe that it is reasonable to believe that certain expenditures and development costs in furtherance of the plan and potential development should be allowable redevelopment project costs under the plan . . . ." Ex. 5.

25. On April 5, 2010, a public hearing was conducted regarding the Mounds TIF #1 Redevelopment Plan, Project, and Area.

26. On April 19, 2010, the City Council passed Ordinance No. CO-2010-02, titled, Ordinance Approving Mounds TIF #1 Tax Increment Financing Redevelopment Plan and Redevelopment Project (the "TIF Ordinance"). A copy of the TIF Ordinance is attached hereto as Exhibit 6 and incorporated herein by reference.

27. The TIF Ordinance designated the Redevelopment Project Area to be classified as a combination "Conservation Area" "Blighted Area" and found that the Redevelopment Project Area "would not be reasonably anticipated to be developed without the adoption of the Mounds TIF #1 Redevelopment Plan." Ex. 6, p. 2 ¶ 1.

28. The TIF Ordinance adopted, approved, and made a part of the ordinance the TIF #1 Redevelopment Plan and Project (the "Redevelopment Plan"). Ex. 6, p. 3 ¶ 2. A copy of the Redevelopment Plan is attached as Exhibit B to the TIF Ordinance and incorporated herein by reference.

29. The Redevelopment Plan explained that it is the "comprehensive program of the municipality for development or redevelopment intended by the payment of redevelopment project costs to reduce or eliminate those conditions the existence of which qualified the redevelopment project area as a blighted area or conservation area or combination thereof . . . ." Ex. 6, p. 24, § IV.A.

30. The Redevelopment Plan provided that "[a]n essential element of the Redevelopment Plan is a combination of private developments in conjunction with public investments and infrastructure improvements." Ex. 6, p. 26, § IV.E.

31. The Redevelopment Plan contemplated that, once adopted, part of implementing the Plan would involve negotiated agreements with private developers using tax increment funds: "Once the Plan is adopted, the City will negotiate redevelopment agreements with private developers who will propose the use of tax increment funds to facilitate a Development and Redevelopment Project." Ex. 6, p. 28, § V.A.

32. The Redevelopment Plan stated that the City may incur project costs and expenses and any other costs that are eligible under the TIF Act "as a result of implementing a Redevelopment Plan." Ex. 6, p. 28, § V.B.

33. The Redevelopment Plan provided that "[t]he primary source of funds to pay for Redevelopment Project costs associated with implementing the Redevelopment Plan shall be funds collected pursuant to tax increment allocation financing to be adopted by the City." Ex. 6, p. 33, § V.F. Such tax increment revenue "shall be allocated to a special fund each year (the "Special Tax Allocation Fund"). The assets of the Special Tax Allocation Fund shall be used to pay Redevelopment Project Costs and retire any obligations incurred to finance Redevelopment Project Costs." *Id.*

34. The Redevelopment Plan provided that the budget for Redevelopment Project Costs "will not exceed $18,000,000 plus any additional interest and financing costs as may be required." Ex. 6, p. 32 § V.C and Ex. E.

35. The Redevelopment Plan provided an estimated budget of $2,000,000 for "property assembly costs; including acquisition of land and other property; real or personal, demolition of structures, site preparation, and the clearing and grading of land." *Id.* The Redevelopment Plan provided an estimated budget of $4,000,000 for the costs of "rehabilitation,

reconstruction, repair, or remodeling of existing public or private buildings, including residential structures, fixtures, or leasehold improvements." *Id.*

36. On April 19, 2010, the City Council passed Ordinance No. CO-2010-03, which designated the Mounds TIF #1 Redevelopment Project Area described in the Redevelopment Plan. A copy of the Ordinance is attached hereto as Exhibit 7 and incorporated herein by reference.

37. On April 19, 2010, the City Council passed Ordinance No. CO-2010-04, which adopted tax increment financing for the Redevelopment Plan and the Redevelopment Project Area (the "Financing Ordinance"). A copy of the Financing Ordinance is attached hereto as Exhibit 8 and incorporated herein by reference.

38. The Financing Ordinance provided that the City shall collect TIF funds and "deposit said funds in a special fund . . . of the municipality for the purpose of paying the Mounds TIF #1 Redevelopment Project costs . . . ." Ex. 8, pp. 1-2, ¶ 2.

39. On or about April 21, 2010, the City and Westmore entered into the Redevelopment Agreement "in accordance with the TIF Act, the City of Mounds approved ordinances adopting tax increment financing and the Mounds TIF #1 Tax Increment Financing Plan and Project." Ex. 1, p. 1.

40. In the Redevelopment Agreement, Westmore agreed to perform the following work: "The rehabilitation of property for use by Developer, rehabilitation including public infrastructure, utility extension, site work and grading, engineering fees and interest costs; all to be used for commercial activities in accordance with the Redevelopment Plan." Ex. 1, p. 4, ¶ 2.1.

41. The Redevelopment Agreement stated that "[t]he City hereby accepts the Redevelopment Proposal, as amended hereby, and selects [Westmore] exclusively to perform the Work as outlined herein, in accordance with the terms of this Agreement." Ex. 1, p. 4, ¶ 3.

42. The Redevelopment Agreement provided that Westmore was to develop property located at 764 S. Blanche, Mounds, Illinois (the "Property"). Ex. 1, p. 2.

43. The Property was not owned by the City or any municipality.

44. The Redevelopment Agreement provided that Westmore would receive annually either 75% of the TIF Revenues generated by the Property and received by the City, or a total of all eligible Redevelopment Project Costs. Ex. 1, p. 2.

45. The Redevelopment Agreement defined Westmore's Redevelopment Project Costs as "[t]he sum total of all reasonable or necessary costs actually incurred and paid in performing the Work, and any such costs incidental to the Redevelopment Plan or Redevelopment Project" excluding Westmore's internal costs, overhead, margin, or profit. Ex. 1, p. 3.

46. The Redevelopment Agreement provided a procedure by which Westmore would receive reimbursement from the TIF Special Allocation Fund for its Redevelopment Project Costs. Ex. 1, pp. 5-6, ¶ 5. The reimbursement procedure was as follows:

   a. Westmore would submit a request for payment of Redevelopment Project Costs. Ex. 1, p. 5, ¶ 5.1.

   b. Within 30 days of the submittal, the City would approve or disapprove any request. Ex. 1, p. 6, ¶ 5.2.

   c. "Within 15 days of approval of any Request, the City shall pay [Westmore] for such approved Redevelopment Project Costs to the extent monies are available in

the Special Allocation Fund. Such payment shall continue until such time as the earlier of the following: (i) [Westmore] receives a cumulative total of $350,000.00 in payments from the Special Allocation Fund; (ii) the payment time period described in the 'Developer's Share' expires; (iii) the date the Mounds TIF #1 Tax Increment Financing Area expires." Ex. 1, p. 6 ¶ 5.3.

47. The amount of Westmore's Redevelopment Cost payments were capped at $350,000.00: "In the event the Developer's eligible Redevelopment Project Costs are less than $350,000.00, the Developer shall collect a maximum amount equal to the total eligible Redevelopment Project Costs, but under no circumstances shall that amount collected exceed $350,000." Ex. 1, p. 6, ¶ 5.3.

48. The Redevelopment Agreement limited the money Westmore could receive to costs incurred pursuant to the TIF Act: "Nothing in this Agreement shall obligate the City to pay or to reimburse the Developer for any cost that is not incurred pursuant to Section 11-74.4-3 of the TIF Act and that does not qualify as land acquisition, professional fees, public infrastructure, utility extensions, interest costs, site preparation under Section 11-74.4-3 (q) (3) as determined by the City." Ex. 1, p. 6, ¶ 5.4.

49. The Redevelopment Agreement limited payment to Westmore from the Special Allocation Fund and prohibited payment from any other source: "Notwithstanding any other term or provision of this Agreement, the City's obligations pursuant to this Agreement are limited to monies in the Special Allocation Fund, and from no other source, to a maximum of $350,000.00 should the Work be completed. This agreement does not compel the City's General Fund, or any other source of funds, to provide monies for any amount or obligation identified herein." Ex. 1, p. 6, ¶ 5.5.

50. The Redevelopment Agreement provided: "The City represents and warrants that . . . [t]he City (i) is an Illinois municipal corporation, and (ii) has full corporate power to execute and deliver and perform the terms and obligations of this Agreement. The City has been authorized by all necessary action to execute and deliver this Agreement, which shall constitute the legal, valid, and binding obligation of the City, enforceable in accordance with its terms." Ex. 1, pp. 9-10, ¶ 12(a).

51. In reliance on the Redevelopment Agreement, Westmore incurred significant expenses in redeveloping the Property.

52. In July 2013, Westmore requested payment from the Special Allocation Fund pursuant to the Redevelopment Agreement, in the amount of $16,769.63.

53. Pursuant to the Redevelopment Agreement, the City paid Westmore $16,769.63.

54. In July 2014, Westmore requested payment from the Special Allocation Fund pursuant to the Redevelopment Agreement, in the amount of $17,224.83.

55. On September 2, 2014, the City, through its agent, Municipal Consulting Group, Ltd., notified Westmore that the Redevelopment Agreement is void and the City was legally prohibited from paying Westmore from the Special Allocation Fund. A copy of the notice is attached hereto as Exhibit 9 and incorporated herein by reference.

56. Specifically, the City stated that the Redevelopment Agreement required, and did not receive, approval by a majority of the City Council. Ex. 9, p. 1.

## COUNT I
## Declaratory Judgment

**(Against the City of Mounds)**

57. Westmore hereby incorporates and adopts by reference each and every allegation set forth above.

58. A dispute has arisen between Westmore and the City in that the City contends that the Redevelopment Agreement is void because it required, but never received, approval by an ordinance passed by a majority of the City Council pursuant to Sections 3.1-40-40 and 8-1-7 of the Illinois Municipal Code (65 ILCS 5/3.1-40-40 and 8-1-7).

59. Westmore contends that no additional ordinance was required to authorize the Redevelopment Agreement.

60. Under Illinois law, a Mayor is "the chief executive officer of a city." 65 ILCS 5/3.1-15-10.

61. The Mayor "shall perform all the duties which are prescribed by law, including ordinances, and shall take care that the laws and ordinances are faithfully executed." 65 ILCS 5/3.1-35-5.

62. Under Illinois law, "all powers granted, either expressly or by necessary implication, by this Code, by Illinois statute, or the Illinois Constitution to municipalities may be exercised by those municipalities, and the officers, employees and agents of each notwithstanding effects on competition." 65 ILCS 5/1-1-10.

63. The TIF Act provides that a municipality may "*[b]y ordinance* introduced in the governing body of the municipality . . . approve redevelopment plans and redevelopment projects, and designate redevelopment project areas . . . ." 65 ILCS 5/11-74.4-4(a) (emphasis added).

64. The next subsection of the Code states that a municipality may "[m]ake and enter into all contracts with . . . developers . . . and others necessary or incidental to the implementation and furtherance of its redevelopment plan and project." 65 ILCS 5/11-74.4-4(b).

65. When a municipality seeks to enter an agreement to develop property owned by the municipality, subsection 4-4(c) specifically requires the adoption of an ordinance plus public disclosure of the disposition and all bids and proposals made to the municipality:

> No conveyance, lease, mortgage, disposition of land or other property *owned by a municipality*, or *agreement relating to the development of such municipal property* shall be made except upon the adoption of an ordinance by the corporate authorities of the municipality. Furthermore, no conveyance, lease, mortgage, or other disposition of land owned by a municipality or agreement relating to the development of such municipal property shall be made without making public disclosure of the terms of the disposition and all bids and proposals made in response to the municipality's request.

65 ILCS 5/11-74.4-4(c) (emphasis added).

66. Unlike Section 11-74.4-4(a) and (c), Section 11-74.4-4(b) does not require the municipality to pass an ordinance to enter into an agreement with a developer to develop non-municipal-owned property.

67. Here, pursuant to 65 ILCS 5/11-74.4-4(a), the City, "by ordinance" approved the Mounds TIF #1 Redevelopment Plan, Project, and Area. *See* Exs. 6-8.

68. The City Council approved these ordinances by majority vote pursuant to 65 ILCS 5/3.1-40-40.

69. In passing the ordinances adopting the Redevelopment Plan, Project, and Area, and tax increment financing, the City Council approved by majority vote an $18,000,000 liability for the City, tax increment financing funds to be deposited in a special fund for the purpose of paying redevelopment project costs, and agreements with private developers to use the tax increment funds to facilitate the redevelopment project.

70. Following the passage of the ordinances adopting the Redevelopment Plan, Project, and Area, the City, pursuant to 65 ILCS 5/11-74.4-4(b), entered into a contract with

Westmore necessary or incidental to the implementation and furtherance of the Redevelopment Plan and Project.

71. The Redevelopment Agreement directed Westmore to develop property that was not owned by the City or another municipality.

72. Because the Redevelopment Agreement did not involve the development of property owned by a municipality, the City was not required to pass an ordinance approving the Redevelopment Agreement under the TIF Act.

73. Because Westmore's payments under the Redevelopment Agreement were to be paid exclusively from the tax increment financing special fund and not the general fund, the City was not required to pass an appropriation ordinance pursuant to Section 8-1-7 of the Municipal Code prior to entering the Redevelopment Agreement. *See Heritage Commons Partners v. Summit*, 730 F. Supp. 821, 824 (N.D. Ill. 1990) (J. Posner) (municipal contract did not require prior appropriation under Section 8-1-7 because the contract "was to be financed out of federal grants, the sale of bonds, and tax-increment financing, not out of general revenues").

74. Because no additional ordinance was required for the City to enter the Redevelopment Agreement, the City did not have to follow the procedures set forth in Section 3.1-40-40 of the Municipal Code, which sets forth the voting requirements for "[t]he passage of all ordinances for whatever purpose, and of any resolution or motion." 65 ILCS 5/3.1-40-40.

75. Alternatively, to the extent the Redevelopment Agreement required the concurrence of a majority of the City Council, the City Council did so when it:

    a. adopted the Westmore Inducement Resolution, which stated that: (i) "the City and Westmore Equities, LLC will be expending certain funds for and it is the intent of the City to assist Westmore Equities, LLC with these

        expenditures from the TIF program"; (ii) "the City and Westmore Equities, LLC wish to pursue a plan for redevelopment of the area and make such expenditures as are reasonably necessary in that regard with confidence that said expenditures may be allowable redevelopment project costs"; and (iii) "certain expenditures and development costs in furtherance of the plan and potential development should be allowable redevelopment project costs under the plan";

    b.    adopted the TIF Ordinance, Redevelopment Plan, and Financing Ordinance; and

    c.    expressly stated in the Redevelopment Agreement: (i) that the City Council believed that "the performance generally of [the] Agreement [is] in the best interests of the City . . . and in accord with the public purposes specified in the Redevelopment Plan."; (ii) that the City had "full corporate power to execute and deliver and perform the terms and obligations of [the] Agreement"; and (iii) that the City had "been authorized by all necessary action to execute and deliver [the] Agreement, which shall constitute the legal, valid, and binding obligation of the City, enforceable in accordance with its terms."

76. Alternatively, the City approved the Redevelopment Agreement by ratification when it authorized the payment of $16,769.63 to Westmore pursuant to the Redevelopment Agreement.

77. Alternatively, the City is estopped from voiding the Redevelopment Agreement because the City made affirmative acts to induce Westmore to act, and Westmore substantially

relied on the City's affirmative acts to its detriment, investing nearly $1,000,000 in project costs to redevelop the Property.

WHEREFORE, Plaintiff Westmore Equities, LLC, requests that the Court enter a declaration pursuant to 28 U.S.C. § 2201 that:

A. the Redevelopment Agreement is a valid, binding, and enforceable contract between Westmore and the City;

B. the City shall follow the procedures set forth in the Redevelopment Agreement to pay Westmore from the Special Allocation Fund for Westmore's July 2014 request for payment, and all subsequent requests for payment; and

C. for such further relief as the Court deems just and proper.

## COUNT II
## Breach of Warranty of Authority

**(Against Defendants Butler and Barksdale)**

78. Westmore hereby incorporates and adopts by reference each and every allegation set forth above.

79. At the time the parties executed the Redevelopment Agreement, Butler was the City Mayor and Barksdale was the City Clerk.

80. In signing and attesting to the Redevelopment Agreement, Defendants Butler and Barksdale warranted to Plaintiff that they had authority to enter into the Redevelopment Agreement on behalf of the City.

81. In the event the Redevelopment Agreement is determined to be unenforceable because of a lack of authority, then Defendants Butler and Barksdale breached their warranty of authority.

82. As a direct and proximate result of Defendants' breach of warranty of authority, Westmore has been damaged in the amount of $350,000.00.

WHEREFORE, Plaintiff Westmore Equities, LLC, requests that the Court enter judgment in its favor and against Defendants Waymon A. Butler, Jr., and Robin L. Barksdale, jointly and severally, in the amount of $350,000.00 plus pre-judgment and post-judgment statutory interest, plus costs incurred in this action, and for such further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all issues so triable.

Dated: February 2, 2015

GOLDENBERG HELLER ANTOGNOLI & ROWLAND, P.C.

/s/ Kevin P. Green
Kevin P. Green #06299905
kevin@ghalaw.com
2227 South State Route 157
Edwardsville, IL 62025
618-656-5150
618-656-6230 (fax)
*Attorneys for Plaintiff Westmore Equities, LLC*